# District of Columbia
# Court of Appeals

**No. 14-CF-868**

JAMES EARL BLACKMON,

Appellant,



FILED

SEP 29 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

v.

**CF1-21355-08**

UNITED STATES,

Appellee.

On Appeal from the Superior Court of the District of Columbia<br>Criminal Division

BEFORE:  FISHER and BLACKBURNE-RIGSBY, *Associate Judges*; and RUIZ, *Senior Judge*

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel.  On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment of conviction is affirmed.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated:  September 29, 2016.

Opinion by Senior Judge Vanessa Ruiz.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CF-868

FILED 9/29/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

JAMES EARL BLACKMON, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF1-21355-08)

(Hon. Jennifer M. Anderson, Trial Judge)

(Argued April 21, 2016                    Decided September 29, 2016)

*Matthew B. Kaplan* for appellant.

*John L. Hill*, Assistant United States Attorney, with whom *Channing D. Phillips*, United States Attorney, and *Elizabeth Trosman*, *Sharon Donovan*, *Elizabeth H. Danello*, and *Ann K. H. Simon*, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and BLACKBURNE-RIGSBY, *Associate Judges*, and RUIZ, *Senior Judge*.

RUIZ, *Senior Judge*:  In this appeal, appellant James Blackmon claims that he is entitled to reversal of his convictions and a new trial because his appointed counsel had a continuing conflict of interest as a result of an error made in the course of considering the government's plea offer.  We conclude that the trial court

recognized the actual conflict of interest that was presented and addressed it in an appropriate manner by appointing other counsel to advise concerning the plea offer, and that the record does not support that there was a realistic possibility of lingering conflict that required a mid-trial hearing or appointment of new counsel for trial. Thus, we affirm the judgment of conviction.

## I.

In March 2009, appellant was tried and convicted by a jury of three counts of first-degree sexual abuse (D.C. Code § 22-3002) (2012 Repl.), one count of attempted first-degree sexual abuse (D.C. Code §§ 22-3002, -3018), one count of first-degree burglary (D.C. Code § 22-801), one count of kidnapping (D.C. Code § 22-2001), and one count of assault with significant bodily injury (D.C. Code § 22-404 (a)(2)), all arising out of acts committed on February 4, 2008. Appellant was sentenced to 34 years of incarceration. On direct appeal, this court remanded for a new trial because appellant was denied the right to confrontation under the Sixth Amendment when, over his objection, the government was permitted to present the results of DNA testing through a witness who had neither conducted nor observed the testing. *Blackmon v. United States*, No. 09-CF-702, Mem. Op. & J. (D.C. Apr. 22, 2013).

Following a second trial before a jury in April 2014, appellant was acquitted of burglary, but convicted of all remaining charges. The trial court again sentenced appellant to 34 years of incarceration.

Before appellant's second trial, the government offered a plea agreement: in exchange for a plea of guilty to all the charges, the government would recommend that appellant receive no more than 25 years of incarceration. One of appellant's attorneys, Jason Downs, advised appellant that if he rejected the plea offer and was convicted at a second trial, he could not be sentenced to incarceration for more than the 34 years he had received in his first trial. Appellant rejected the plea. On the first day of trial, realizing his mistake,[1] Downs disclosed his error to the court and requested "that the Court appoint independent counsel to speak with [appellant]." Downs made clear that he was not withdrawing from the case but felt that he should not be the person to explain appellant's options in light of his erroneous advice. Appellant also addressed the court at an ex parte hearing at the bench. He said that he "was basically misled . . . [he] thought that not going back to trial, [he] would . . . just get the original sentence. . . . [He] never thought [he]

---

[1] The parties agree that the judge presiding over the second trial was not bound by the 34-year sentence imposed by the different judge who presided over the first trial and that, if convicted of all the charges at the second trial, appellant faced a maximum exposure of life imprisonment. *See United States v. Schiller*, 424 A.2d 51, 54 n.4 (D.C. 1980).

could get more time." He added, "[i]f you can get the original . . . plea back[,] I'll take it" and asked that the court "sentence [him] today" because he did not "want to come back to this courthouse anymore."

The trial judge appointed a different lawyer, Michael Madden, "just to give [appellant] advice about . . . [his] options at this juncture." The government made clear that the original plea offer, with the 25-year sentencing recommendation, was no longer on the table. After a brief recess to allow Madden to speak with appellant, Madden explained to the court that appellant "want[ed] to take the Government's plea offer and would have taken it had he not been given erroneous advice at the time." The government instead offered appellant a plea agreement with a government sentencing recommendation of 34 years, noting that appellant had twice been offered the 25-year plea deal, as early as before his first trial, and had twice rejected it.

Downs argued that under *Lafler v. Cooper*, — U.S. —, 132 S.Ct. 1376 (2012), the appropriate remedy was for the court to order the government to re-extend the original plea agreement that appellant would have accepted but for counsel's erroneous advice. There ensued an extensive discussion as to whether or not the court should hold a hearing to determine whether appellant would, in fact,

have taken the 25-year plea offer but for the erroneous advice of counsel. During the course of the discussion, Downs made clear that if a *Lafler* hearing were held, there would be a conflict of interest because he would be a witness at that hearing. The government argued, however, that there was no "conflict for the purposes of trial" noting that any potential conflict between Downs and appellant would be presented in a hearing pursuant to D.C. Code § 23-110 that would occur in a future proceeding. The court concluded that there was no longer a conflict of interest and a *Lafler* hearing was unnecessary.

The next day, appellant rejected the 34-year plea agreement. Nevertheless, the government agreed to cap its allocution at 34 years, arguing that it would "return[] and restore [appellant] to where he was when he rejected that [25-year] plea offer" based on counsel's erroneous advice and would eliminate the need for any future hearings and potential conflicts of interest between Downs and appellant. Madden again argued that a 34-year cap was not an adequate substitute because appellant would have taken the original plea, under which the government would have recommended only 25 years. The court was skeptical, however, noting that "even yesterday, Mr. Blackmon told me that had he . . . thought that he could never have gotten more time [than 34 years] . . . he was comfortable in going forward with the trial." The court agreed to be bound by the upper limit of 34

years "which . . . put [appellant] back in the exact same position" he had been before the error was revealed. Madden's limited representation of appellant ceased at that time, and the trial continued.

Later the same day, appellant's counsel (Downs) requested a mistrial and appointment of new counsel because appellant had "lost confidence in his defense" and was "unwilling to proceed any further with [defense counsel]." As a result, defense counsel argued that they were unable to meaningfully consult with appellant on trial strategy, which prejudiced appellant. Appellant told the court that he did not "trust [counsel's] integrity in this trial." The court denied the request for new counsel and a mistrial stating, "when Mr. Downs realized that perhaps he had given [appellant] incorrect advice . . . he immediately brought it to my attention and we addressed it." Furthermore, based on appellant's statements, the court believed that appellant simply did not want to go to trial because he "ha[d] changed his mind and want[ed] to plead guilty, but that plea [was] no longer on the table."

Counsel renewed the request for a mistrial and to appoint new counsel because of a difference of opinion regarding the defense's trial strategy concerning the government's DNA evidence. Appellant's attorneys wished to proceed on the

theory that the DNA evidence was unreliable, while appellant preferred the theory that the government had the opportunity to plant the DNA evidence. The judge denied the renewed request, again stating "[t]o me it seems very clear from everything that's going on that [appellant] has decided, for whatever reason, that he wants to plead guilty and the plea offer is not acceptable to him. So I believe this is all an effort to try to get back to that point, so I'm going to deny your request."

The case proceeded to trial. The jury acquitted appellant of burglary and found him guilty of all the charges of sexual abuse, kidnapping, and assault. He was sentenced to imprisonment for 34 years.

## II.

In this direct appeal, appellant argues that (1) trial counsel had a conflict of interest "when it became evident that there was a colorable possibility that Downs might eventually be found to have acted improperly during the course of his representation," and (2) the trial court improperly denied appellant's request that new counsel be appointed without first inquiring into the nature and import of the

asserted conflict of interest.[2] Appellant claims he is entitled to a third trial at which he is represented by conflict-free counsel.

This court's review of a trial court's determination of whether trial counsel was ineffective, including claims based on conflict of interest, "is a deferential one [and w]e accept the judge's factual findings unless they lack evidentiary support, but we review . . . legal conclusions *de novo.*" *Derrington v. United States*, 681 A.2d 1125, 1132 (D.C. 1996) (internal quotation marks and citations omitted).

Ordinarily, when claiming ineffective assistance of counsel, a defendant must establish that (1) counsel's performance was deficient, and (2) that the deficiency resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). However, where a conflict of interest has been alleged, this court "does not require proof of prejudice, but only a showing that counsel's representation was adversely affected by an actual conflict of interest." *Thomas v. United States*, 685 A.2d 745, 751 (D.C. 1996).

---

[2] Appellant does not argue that his claim of ineffective assistance, presented on direct appeal, arises from the erroneous advice he received, which led him to reject the 25-year plea deal. As appellant recognizes, such a claim would be pursued in a motion for new trial under D.C. Code § 23-110 (2012 Repl.).

In *Cuyler v. Sullivan*, the Supreme Court held that a defendant's Sixth Amendment right to counsel is violated if the defendant can show that counsel "actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *Malede v. United States*, 767 A.2d 267, 270 (D.C. 2001) (quoting *Strickland*, 466 U.S. at 692 (quoting *Cuyler*, 446 U.S. 335, 350 (1980))) (internal quotation marks omitted).[3] An attorney has an actual conflict of interest when "the attorney's and the client's interests diverge with respect to a material, factual or legal issue or to a course of action." *Veney v. United States*, 738 A.2d 1185, 1192-93 (D.C. 1999) (quoting *Cuyler*, 446 U.S. at 356 n.3).

An example of an actual conflict of interest occurs with representation of multiple clients, "when a defense attorney is required to make choices advancing one client's interest to the detriment of another's." *Wages v. United States*, 952 A.2d 952, 960 (D.C. 2008) (quoting *Veney*, 738 A.2d at 1192) (internal quotation

---

[3] Appellant argues that, because he brought the conflict to the trial court's attention, the *Cuyler* test does not apply and, therefore, he need not show an adverse effect arising from the conflict of interest. Because we conclude that there was no continuing conflict of interest once Madden was appointed to advise appellant about Downs's erroneous advice, there is no need to reach appellant's contention. *Freeman v. United States*, 971 A.2d 188, 201 (D.C. 2009) ("[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.") (quoting *Cuyler*, 446 U.S. at 350).

marks and brackets omitted).  This court has also found an actual conflict where the interests of counsel and the defendant diverged such as when a defendant files an ethical complaint against the attorney and a disciplinary investigation has been initiated.  *Douglas v. United States*, 488 A.2d 121, 135 (D.C. 1985).  We declined to find a conflict based solely on a hostile relationship between the defendant and his attorney where a formal complaint had been filed, but no investigation was initiated.  *Malede*, 767 A.2d at 269, 271 (noting that counsel requested to withdraw from case and called client a "malevolent little man").  Here, there was no multiple representation, no complaint, and no disciplinary investigation of counsel.

Appellant's reliance on *Crawford v. Katz*, 32 A.3d 418, 435-36 (D.C. 2011), is misplaced.  In *Crawford*, appellant and counsel were both subject to sanction motions attacking the factual basis for the suit, thereby putting them in potentially conflicting positions.  *Id*.  As the record in *Crawford* did not resolve pertinent "questions of fact" regarding the alleged conflict of interest, this court did not hold that an actual conflict existed, but remanded for further proceedings.  *Id*.  Unlike in *Crawford*, there was no existing proceeding in this case that may have created a conflict between counsel and client.  Nor is there any apparent need for a remand in this case as Downs openly admitted his error to appellant and the trial court, and appellant also directly addressed the court concerning his reliance on counsel's

erroneous advice and wish to take the first plea offer. Indeed, appellant's contention is "the facts needed to decide this case are squarely before this court" and there is no need for further factual development in a collateral proceeding.

To be clear, the fact that counsel has provided deficient representation is not by itself sufficient to establish a conflict of interest. Here, the conflict that arose concerned advising appellant about his options in light of Downs's erroneous advice and presenting appellant's chosen course to the court. *See Sullivan v. United States*, 721 A.2d 936, 937 (D.C. 1998) ("It would be a conflict of interest for a lawyer to appeal a ruling based on the lawyer's own ineffectiveness."). The trial court recognized the inherent conflict of interest in having Downs advise appellant regarding his options after discovering Downs's error and therefore appointed new counsel, Michael Madden, to avoid the conflict. Madden consulted with appellant and repeatedly represented to the court appellant's wish to accept the first plea offer, with the sentencing recommendation of 25 years. Once Madden replaced Downs as counsel with respect to the plea and the trial court rejected the argument he presented on appellant's behalf, Downs continued to represent appellant as trial counsel.

Appellant contends, however, that Downs's representation was compromised because Downs had "exposed himself to the risk of sanctions, reputational harm and civil liability," and therefore had a "conflicting incentive to conduct the trial in a manner that would minimize harm to his own interests" — presumably even at the expense of appellant's interests. As evidence of Downs's continuing conflict, appellant points to their disagreement on trial strategy regarding (1) whether appellant should testify, and (2) the defense case with regard to the government's DNA evidence.

Disagreement between counsel and client as to trial strategy is nothing new and, by itself, is not evidence of an actual or potential conflict of interest. Our law is clear "that counsel for the accused has ultimate responsibility for many tactical trial decisions, such as which witnesses to call, [and] which arguments to raise on appeal," but the "right to testify in a criminal trial is a fundamental and personal right which can only be waived by the defendant." *Boyd v. United States*, 586 A.2d 670, 673-74 (D.C. 1991). The record shows that appellant waived his right to testify, in open court, after the judge advised him of his right to take the stand. Appellant was certainly entitled to have counsel's unconflicted advice on whether it was in appellant's interest to testify. But appellant does not argue that counsel's

advice in this regard was tainted by a conflict of interest;[4] rather he argues that following Downs's mistaken advice during the plea negotiation, the attorney-client relationship broke down. A breakdown in communication — even a hostile relationship — between counsel and client is not the same, however, as a conflict of interest that leads counsel to act with less than complete zeal and loyalty to his client.

Nor does the record support that the defense strategy was influenced by any conflict perceived by counsel. Originally, appellant and counsel had agreed to argue that the government had the opportunity to plant the DNA evidence. A week prior to trial, however, they jointly decided to instead argue that the DNA evidence was unreliable. After realizing his attorney's error in advising him concerning the plea, however, appellant no longer trusted his counsel's advice and wanted to proceed under the initial theory that the government could have planted the DNA evidence. Counsel proceeded at trial with the theory that the DNA evidence presented by the government was unreliable, arguing to the jury that mistakes were made in the DNA testing: an expired rape kit was used and the vaginal swab tested — a key piece of evidence — was lost. Counsel also argued that the science of

---

[4] The record does not disclose what counsel advised in this regard or whether appellant followed counsel's advice.

DNA testing has advanced sufficiently so that a new test on the lost vaginal swab could yield different results. First, it is important to note that it is not the role of this court to "second-guess trial counsel's strategic choices because many alternative tactics are available to defense attorneys and their actions are often the products of strategic choices made on the basis of their subjective assessment of the circumstances existing at trial." *Brown v. United States*, 934 A.2d 930, 943 (D.C. 2007) (internal quotation marks and citation omitted). Counsel's arguments, even if ultimately unsuccessful, were reasonable and based on the evidence in the case. Second, the decision to change the defense strategy was made, with appellant's acquiescence, *one week before* Downs's error in advising appellant concerning the first plea and therefore could not have influenced counsel's change of strategy. Even if appellant had cause for second thoughts about the changed strategy once he became aware of counsel's mistaken advice about the plea and doubted counsel's competence overall, that does not mean that counsel's advice was influenced by a conflict.

We are not persuaded by appellant's argument that counsel suggested the change in strategy because the plant defense "would have necessarily involved an especially harsh attack on the integrity of the government and its agents at a time when defense counsel had an incentive to maintain their relationship with the

prosecutors." Appellant does not elaborate on what counsel's incentive was, and we perceive none. The government had no hold on Downs nor was it in a position to influence Downs's performance as a result of his erroneous advice to appellant, which Downs himself brought to the attention of the court and acknowledged was legally incorrect. The person whom Downs had an incentive to please in that regard was appellant, who could file a disciplinary or civil complaint against him or challenge his professional competence in a § 23-110 proceeding. The record supports that defense counsel was aware of appellant's dissatisfaction and presented it to the court, renewing the request for a mistrial and for the court to appoint new counsel based on the breakdown in appellant's trust and the difference of opinion between appellant and his attorneys regarding how the defense should respond to the government's DNA evidence.[5]

Finally, appellant argues that his counsel had an incentive to agree to the government's offer of a 34-year cap on sentencing, because it "essentially wipe[d] away Downs's error" despite the fact that appellant wanted to recover the first plea offer recommending 25 years. As a result of receiving this benefit, appellant

---

[5] Downs did not ask to withdraw because he perceived a conflict. *Cf. McCrimmon v. United States*, 853 A.2d 154, 164 (D.C. 2004) (noting that counsel's subjective belief that a conflict is present "while not conclusive, is strong evidence of an actual conflict").

argues, Downs pulled his punches and did not cross-examine the complainant (who did not identify appellant as her assailant), her friend or the nurse and sexual assault examiner who treated the complainant in the hospital after the sexual assault. The record refutes appellant's argument because it shows that Downs argued on behalf of appellant that the appropriate remedy under *Lafler* was for the court to order the government to re-extend the original plea offer. Moreover, agreement to the 34-year plea offer would not "wipe away" counsel's mistaken advice as a matter of law if there is a reasonable probability that counsel's error misled appellant to reject the 25-year plea offer. *See Lafler*, — U.S. —, 132 S.Ct. at 1378 (noting that if counsel renders deficient performance in connection with plea bargaining, "prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence"). That issue is not the subject of this appeal but of any post-conviction motion that appellant might file. See note 2, *supra*. On this record, we discern no divergence in interests between appellant and his trial counsel. We, therefore, conclude that appellant has not shown there was a conflict of interest that required appointment of new counsel for trial.

**III.**

Finally, appellant argues that the trial court had an affirmative duty to inquire into the effectiveness of counsel because of the possibility of a conflict of interest. Appellant asserts that the trial court failed to conduct an inquiry and, as a result, the potential conflict of interest at issue — "the divergence of [appellant's] and defense counsel's interests because of the possibility that counsel might face some consequence for his incorrect legal advice" — was never explained to appellant and he was, therefore, not in a position to waive the conflict.

The trial court did not deny the request for new counsel, however, on the assumption that appellant had waived a conflict of interest. The trial court recognized there was a conflict as it related to Downs's ability to effectively communicate his error to appellant and to advise appellant about his options in light of that error. The trial court addressed this conflict of interest by appointing independent counsel to advise appellant on that issue.

A "trial court has an affirmative 'duty to inquire' into the effectiveness of counsel whenever 'the *possibility* of a conflict' becomes apparent before or during trial." *Douglas*, 488 A.2d at 136 (quoting *Wood v. Georgia*, 450 U.S. 261, 272

(1981)) (emphasis in original). The court declined to hold a hearing mid-trial, because it deemed that the actual conflict of interest had been resolved by the appointment of unconflicted counsel for the purpose of advising appellant concerning the pleas that had been offered, before and after Downs's mistaken advice. That new counsel advised appellant and argued that the government should re-extend the original 25-year plea offer, but the trial judge rejected that argument.[6]

---

[6] The trial court rejected the argument because it believed that appellant had intended to go to trial, rather than accept the plea offer. The court recalled that appellant said that he never expected he would be sentenced to more than 34 years if he rejected the 25-year plea offer and the court inferred that appellant had simply changed his mind about going to trial. In doing so, the trial court may have acted prematurely, anticipating a claim of ineffectiveness based on deficient performance, not conflict of interest. *See Johnson v. United States*, 746 A.2d 349, 354 (D.C. 2005) (noting that except for claims based on conflict of interest, "once jeopardy attaches in a criminal trial, any subsequent allegation of ineffective assistance should be addressed in a post-trial motion or on appeal (or both) where the *Strickland* standard can be applied in proper context"). Whether appellant relied on counsel's advice was not dispositive of the question before the court: the existence of a conflict of interest and whether it had an impact on counsel's representation.

The question of appellant's reliance on Downs's mistaken advice is appropriately addressed as part of the prejudice prong of *Strickland* in a proceeding pursuant to D.C. Code § 23-110 and, if prejudice is found, in determining the proper remedy. *Lafler*, 132 S. Ct. at 1389. The need for a hearing at that time will depend on the evidence appellant proffers with the motion for relief. *Id*. As argued by defense counsel, if Downs were to be a witness at such a hearing, he could not also act as a lawyer and appellant would be entitled to appointment of different counsel. But the mere fact that Downs could be a witness in a post-conviction hearing does not necessarily imply a conflict of interest with appellant

(continued . . .)

For the reasons discussed above, the record does not reveal the existence of any other potential conflict of interest between appellant and defense counsel at trial that required the court to inquire into the effectiveness of counsel. *Cf. Douglas*, 488 A.2d at 136.

In conclusion, defense counsel's acknowledged erroneous advice concerning the first plea offer was appropriately addressed by the trial court's appointment of special counsel to advise appellant concerning his plea options. Our review of the record persuades us that the error in counsel's advice did not affect counsel's representation of appellant at trial. On this record, the trial court did not need to hold a hearing to decide whether to grant a mistrial and appoint new counsel based on an asserted conflict of interest. Accordingly, the judgment of conviction is

*Affirmed.*

_____

(. . . continued)

during trial. First, appellant contends in his brief on appeal that he could assert a privilege to prevent Downs from testifying. Second, Downs's testimony would likely be congruent with — not contrary to — appellant's claims just as Downs's statements to the trial court confirmed what appellant said to the court. On this record, the prospect of a § 23-110 hearing did not raise the possibility of an impending conflict of interest that gave cause to be concerned that Downs's representation during the trial would be compromised.