*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CO-73

JAMES EARL BLACKMON, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF1-21355-08)

(Hon. Jennifer M. Anderson, Motion Judge)

(Argued May 7, 2019                    Decided September 12, 2019)

*Vincent A. Jankoski* for appellant.

*Kathleen Gibbons*, Assistant United States Attorney, with whom *Jessie K. Liu*, United States Attorney, and *Elizabeth Trosman*, *Sitara Witanachchi*, and *Nicholas P. Coleman*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and THOMPSON, *Associate Judges*, and GREENE, *Senior Judge, Superior Court of the District of Columbia.*[*]

---

[*] Sitting by designation pursuant to D.C. Code § 11-707 (a) (2012 Repl.).

THOMPSON, *Associate Judge*:    Appellant James Blackmon challenges the trial court's denial of his "Motion to Vacate, Set-Aside, or Correct The Sentence Pursuant to D.C. Code § 23-110," in which he sought relief based on his trial counsel's deficient advice regarding a plea offer (specifically, counsel's erroneous advice about the maximum sentence appellant could face if he rejected the plea offer and was convicted after a retrial).  Appellant contends that the trial court's conclusion that he failed to show prejudice from his trial counsel's deficient representation was premised on a misinterpretation of *Lafler v. Cooper*, 566 U.S. 156 (2012) (addressing what a defendant must establish to show prejudice from ineffective assistance of counsel if he contends that counsel's deficient advice caused him to reject a plea offer).  We affirm.

## I.

After a trial in March 2009, appellant was convicted of three counts of first-degree sexual abuse, one count of attempted first-degree sexual abuse, one count of first-degree burglary, one count of kidnapping, and one count of assault with significant bodily injury ("ASBI").  *See Blackmon v. United States* ("*Blackmon I*"), 146 A.3d 1074, 1075 (D.C. 2016).  Although the government had asked the court to sentence appellant to life imprisonment without the possibility of parole, the

court (the Honorable Geoffrey Alprin) sentenced him to an aggregate term of 34 years of incarceration. In resolving his direct appeal, this court vacated appellant's convictions and remanded the case for a new trial because, in violation of appellant's Sixth Amendment confrontation rights, the government was allowed to "present the results of DNA testing through a witness who had neither conducted nor observed the testing." *Blackmon I*, 146 A.3d at 1076. Following a second jury trial in April of 2014, appellant was acquitted of burglary, but was convicted again of all other charges. *Id.* The trial court again sentenced appellant to a total of 34 years of incarceration.[1] *Id.*

The instant appeal focuses on what happened during the lead-up to appellant's second trial. The government presented a plea offer under which "if [appellant] pled to First-Degree Sexual Abuse With Aggravating Circumstances,

---

[1] After his first trial, appellant was sentenced to concurrent 25-year sentences for each of the first-degree sexual abuse charges, sentences that were also concurrent with a five-year sentence for attempted first-degree sexual abuse. He was also sentenced to concurrent terms of seven years' incarceration for burglary and kidnapping, which sentences were consecutive to the sentences for other charges. He received a two-year sentence for ASBI, which was consecutive to the sentences for all other charges.

When the jury in the second trial acquitted appellant of burglary, the trial court followed the same sentencing scheme, but the result was still a 34-year sentence.

[the government] would agree to [a Super. Ct. Crim. R.] 11(e)(1)(C) plea of 25 years incarceration . . . with credit for time served." In advising appellant about the plea offer, appellant's trial counsel, Jason Downs, informed appellant that if he rejected the plea offer and was ultimately convicted at the second trial, he would not receive a sentence of incarceration that was more than the 34 years imposed following his first trial. *Blackmon I*, 146 A.3d at 1076. Appellant rejected the plea offer. *Id.*

Shortly after the second trial began, realizing that the advice he had given appellant was mistaken, Mr. Downs disclosed his mistake to the trial court and asked the court to appoint independent counsel to speak with appellant.[2] *Id.* Appellant, in an *ex parte* hearing at the bench, told the court, "If you can get the original . . . plea back[,] I[']ll take it[.]" *Id.* The prosecutor stated in open court, however, that the original 25-year plea offer "was no longer on the table." *Id.* The government instead offered appellant a plea agreement with a government sentencing recommendation of 34 years, an offer appellant rejected. *Id.* at 1076-77. The government then "agreed to cap its allocution at 34 years," asserting that

---

[2] The government's D.C. App. R. 28(k) letter states that "when . . . trial counsel's mistake was disclosed, appellant had heard (1) the government's opening statement . . . and (2) the testimony of . . . the lead investigator in th[e] case[,]" who was a "detective assigned to the sexual assault unit of the Metropolitan Police Department[.]"

this would "restore [appellant] to where he was" when he rejected the 25-year plea offer. *Id.* at 1077. The court (the Honorable Jennifer Anderson) "agreed to be bound by the 34-year sentence and not impose a sentence greater than that." The case proceeded to trial, and, as already noted, the jury acquitted appellant of burglary but found him guilty of all the remaining charges, and the court sentenced him to 34 years' imprisonment. *Blackmon I*, 146 A.3d at 1077.

On January 10, 2017, appellant filed his § 23-110 motion, asserting that he received ineffective assistance of counsel from Mr. Downs. On November 17, 2017, Judge Anderson held an evidentiary hearing on the motion. The court denied the motion on January 11, 2018, concluding that appellant "was not prejudiced by Mr. Downs' deficient advice."

Announcing its ruling from the bench, the court explained that it was "hard . . . to say" whether it would have accepted a Super. Ct. Crim. R. 11(e)(1)(C) plea, but "assume[d], for the purposes of [appellant's] motion, that [it] would have" done so given that it "typically defers to seasoned prosecutors and . . . defense

lawyers who have negotiated a plea." The court viewed the issue as whether appellant "would have taken the plea."[3]

The court began its analysis by recognizing that "a higher sentence [after a second trial] gives rise to a presumption of vindictiveness for having exercised appellate rights . . . ." See *infra* n.6. Stating that it was not aware of any new information that would have justified a more severe sentence than was imposed after appellant's first trial, the court found that appellant faced only a "remote possibility" of a sentence exceeding 34 years. The court found that appellant had not established "a reasonable probability that had he been correctly advised about

---

[3] In its initial remarks, the court credited Mr. Downs's testimony that when he advised appellant about the 25-year plea offer, appellant, who "had already done a bit of time," "was not willing to do much more" and "was not inclined to accept 25 years[,]" in part because it was hard "to keep the young guys off of him" in prison and because he "was very adamant that the DNA in this case that was recovered from the complainant was planted" and that he was innocent.

At the same time, the court observed that appellant's credibility "t[ook] a hit" from his hearing testimony that was "just simply verifiably untrue." The court highlighted appellant's testimony that it was only after Mr. Downs acknowledged his erroneous advice that appellant heard for "the first time that . . . there was a potential of a plea offer of 25 years" and that he previously "didn't know anything about the 25 years . . . ." The court noted that appellant's testimony in that regard was impeached with the transcripts of July 26 and September 4, 2013, status hearings, during which the fact of the 25-year plea offer was put on the record. The court found it "very clear on the record that," despite appellant's hearing testimony, "the plea had been discussed . . . [and appellant] had rejected it."

the remote possibility of a sentence in excess of 34 years, this would have caused him to accept the 25-year plea offer."

The court then explained that what was "more important[]" in resolving appellant's motion was appellant's demeanor at the hearing and statements he made insisting on his innocence.[4] The court observed that during the hearing, appellant had "hemmed and hawed, sighed, [and] took a long time answering some of the questions." The court went on to describe appellant's insistence at the hearing that he "didn't do this crime"; his lament about "[w]hat happened to the truth"; his protest that "you want me to admit something I didn't do"; his testimony that he was "not going to say [he] raped anyone"; his statements that he never knew in seeking a hearing on his counsel's ineffectiveness that he "had to tell [the court] [he] did something knowing that [he] didn't do it" or that "to plead guilty [he] had to accept guilt" and "admit guilt in order to get the 25 [years]"; and his "continually sa[ying] that he did not do this crime." The court noted that appellant "could not answer the questions" after the prosecutor "read out what would have been the proffer"; instead, he was "sigh[ing]" and "breath[ing] deeply" with his "eyes . . . closed."

---

[4] The court stated that the hearing was "really very stark . . . in affecting the [c]ourt's conclusion that [appellant] would not have accepted a plea."

The court acknowledged that after a break in the hearing, appellant returned and said he "would have pled guilty, even though he wasn't guilty, to get the 25 [years,]" but found that testimony "incredible . . . based upon [appellant's] . . . demeanor . . . in court." Citing its general practice in serious cases of asking the defendant "to put into his own words what happened" if the court sees any kind of hesitation, the court noted that when it asked this of appellant, he was "stymied" and said that he would only "be repeating what [he] heard." All of this, the court reasoned, "prove[d] fatal for the prejudice prong of [appellant's] *Lafler* claim." The court concluded that "there is no way [appellant] could have gotten through a plea colloquy" and therefore that appellant "was not prejudiced by Mr. Downs' deficient advice." The court also observed that the "record is clear that [appellant] was not extended an *Alford*[5] plea, which would be the only way that he would be allowed to plead guilty without admitting guilt . . . ."

This appeal followed. Appellant contends that the trial court "erroneously interpreted the *Lafler* factors." He argues that *Lafler* "only requires that the trial

---

[5] *North Carolina v. Alford*, 400 U.S. 25, 37 (1970) ("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

court be willing to accept the 'terms' of the plea agreement [meaning "the reduction in sentence and/or charges that the plea agreement provides"] and "does not address" the matter that the trial court deemed important: "whether the trial court would accept [appellant's] proffered plea of guilty." Appellant argues that the court used an "incorrect legal standard" and thus abused its discretion in treating "acceptance of guilt as a precondition of a finding of prejudice."

## II.

"When claiming ineffective assistance of counsel, a defendant must establish that his counsel's performance was deficient and that the deficiency resulted in prejudice." *Andrews v. United States*, 179 A.3d 279, 293 (D.C. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To show *Strickland* prejudice, a defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. More specifically, and as pertinent here, to show prejudice, a defendant who contends that his counsel's deficient advice caused him to reject a plea offer must "show [that] the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163.

This court reviews a trial court's denial of a § 23-110 motion for abuse of discretion. *Gardner v. United States*, 140 A.3d 1172, 1195 (D.C. 2016). We assess the trial court's findings of fact for clear error and its determinations on questions of law *de novo*. *Id.*

## III.

As in *Lafler*, "[t]he instant case comes to the [c]ourt with the concession that counsel's advice with respect to the plea offer fell below the standard of adequate assistance of counsel guaranteed by the Sixth Amendment[.]" *Lafler*, 566 U.S. at 160. Thus, "it is unnecessary for this [c]ourt to explore" whether the representation by appellant's trial counsel "fell below an objective standard of reasonableness." *Id.* at 163 (internal quotation marks omitted).[6]

---

[6] That said, we think it appropriate to observe that there was some basis for trial counsel's advice that appellant would not likely receive a sentence in excess of 34 years upon retrial. The Supreme Court held in *North Carolina v. Pearce*, 395 U.S. 711 (1969), that "[d]ue process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id.* at 725. "In order to assure the absence of [a vindictive] motivation, whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear" and "must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Id.* at 726; *see also Hammond v. District of Columbia Bd. of Parole*, 756 A.2d 896, 898 (D.C. 2000).

(continued…)

We therefore turn straight to appellant's contention that the trial court "erroneously interpreted the *Lafler* factors." Appellant's reference to the *Lafler* factors is a reference to the Supreme Court's statement that in the circumstance where counsel's ineffective advice "led not to an offer's acceptance but to its rejection[,]" *Lafler*, 566 U.S. at 163, to show *Strickland* prejudice, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 164.

---

(…continued)

The record in this case appears to be without objective information that would have justified imposition of a sentence more severe than 34 years upon appellant's conviction in his second trial. For that reason, it appears that counsel's advice to appellant about his exposure to at most a 34-year sentence, while technically incorrect, was correct as a practical matter. As the trial court commented, no evidence was presented to suggest that "a sentence in excess of . . . 34 years following the second trial would have been anything other than extremely unlikely, given the exacting legal standard for the imposition of a sentence."

The trial court implicitly agreed with appellant's interpretation of what the Supreme Court meant by its reference in *Lafler* to whether the court "would have accepted [the] terms" of a plea offer. *Id.* As noted above, the court began its analysis by assuming that it would have accepted the terms of the plea (i.e., the specification that it was a Rule 11(e)(1)(C) plea) since the court "typically defer[red]" to plea deals negotiated by seasoned counsel.

After that, the court's focus was on whether appellant would actually have taken the plea — in the words of *Lafler*, whether "there is a reasonable probability . . . that the defendant would have accepted the plea." *Lafler*, 566 U.S. at 164. As we read the court's findings, the court understood that question to require consideration of whether appellant would have done those things necessary to successfully enter a negotiated plea: not merely by saying "yes" to the plea offer, but also, through the plea colloquy required by Super. Ct. Crim. R. 11, by doing what the court deemed necessary to enable it to meet its obligation to "determine that there is a factual basis for the plea." Super. Ct. Crim. R. 11(b)(3) (2017). As our case law demonstrates, this may include, as circumstances warrant, the defendant's confirming, at the court's request, the accuracy of the government's allocution and/or the defendant's "tell[ing] what happened in his own words." *Taylor v. United States*, 366 A.2d 444, 446 (D.C. 1976); *see also, e.g., Long v.*

*United States*, 169 A.3d 369, 377 (D.C. 2017) ("[T]he Statement of Offense that appellant signed and agreed to, and that the government recited to the trial court for its proffer at the Rule 11 hearing, met all three elements of conspiracy to satisfy the factual basis for the guilty plea."); *Kyle v. United States*, 759 A.2d 192, 199 (D.C. 2000) (finding "no defect in establishing the factual basis for [the defendant's] plea" where "the government laid out the substance of the charges against him, including testimony of the complaining witness" and the defendant "specifically agreed with the complaining witness' version of the facts"); *Austin v. United States*, 356 A.2d 648, 649 (D.C. 1976) (concluding that there was a factual basis for the defendant's guilty plea where he "specifically acknowledged that he was outside at the scene knowing that others were going to commit the crime" and "admitted that he was 'assisting and advising' the other perpetrators").

To be sure, *Lafler* does not say specifically that a trial court, in considering a claim that the defendant rejected a plea offer because of ineffective assistance of counsel, may take into account whether there was a factual basis for the forgone plea and whether the court would have accepted the plea. But *Lafler* was "merely an application of the Sixth Amendment right to counsel, as defined in *Strickland*, to a specific factual context." *In re Perez*, 682 F.3d 930, 932 (11th Cir. 2012). Its holding was not a "new rule[] of constitutional law." *Id.* at 934. Decided on the

same day as *Missouri v. Frye*, 566 U.S. 134 (2012), *Lafler* cannot reasonably be read to establish an exhaustive list of factors that are relevant to a showing of prejudice in connection with ineffective-advice-by-plea-counsel claims.

In *Frye*, the Supreme Court instructed that to show prejudice from counsel's deficient assistance in connection with a plea offer, a criminal defendant must (1) "demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel . . ."; (2) "demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it" or (3) "the trial court refusing to accept it" if the court "had the authority to exercise that discretion under state law"; and (4) "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* at 147; *see also id.* at 151 ("[I]f the trial court could have refused to accept the plea agreement, and if Frye fails to show a reasonable probability the trial court would have accepted the plea, there is no *Strickland* prejudice."). This court has recognized that *Frye* describes what a defendant must do "[i]n order *to complete a showing* of *Strickland* prejudice": demonstrate that "there is a reasonable probability [that] neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented[.]" *Benitez v. United States*, 60

A.3d 1230, 1237 n.21 (D.C. 2013) (internal quotation marks omitted; emphasis added).[7]

*Frye* and *Benitez* dictate that we reject appellant's argument that the trial court applied an "incorrect legal standard" when it relied on its finding that "there

---

[7] *See also United States v. Tarnai*, No. 17-1330, 2019 U.S. App. LEXIS 23964, *7-10 (3d Cir. Aug. 12, 2019), in which the court reasoned:

> Tarnai has not shown he was prejudiced by defense counsel's conduct. . . . That Tarnai says he would have accepted the . . . offer cannot alone establish prejudice under *Lafler* and *Frye*. He must also show the government and the court would have accepted this agreement. We conclude Tarnai falls short on both fronts . . . [because he] has not established the government would have allowed him to take the plea while insisting on his innocence. . . . Given Tarnai's position on his innocence, there is no reasonable probability the government would have moved forward with the agreement. . . . Even assuming the government was willing to advance the agreement, Tarnai has failed to establish a reasonable probability the court would have accepted the agreement, [since] . . . Tarnai's position would have required the trial court to accept a guilty plea of a defendant who claimed to be innocent. In certain circumstances, a trial court may accept a guilty plea of a defendant despite his unwillingness 'to admit his participation in the acts constituting the crime.' . . . But a trial court need not accept such a plea. . . . For these reasons, we believe there is no reasonable probability the trial court would have accepted Tarnai's plea under the circumstances.

is no way [appellant] could have gotten through a plea colloquy" to conclude that appellant was not prejudiced by Mr. Downs's incorrect advice. That finding was in essence a finding that the court would have rejected appellant's plea and thus "would have prevented [a guilty plea by appellant pursuant to the plea offer] from being accepted or implemented[.]" *Benitez*, 60 A.3d at 1237 n.21. Because we cannot say that the court's finding was clearly erroneous, we have no basis for disturbing the court's determination that appellant failed to show that he was prejudiced by his counsel's erroneous advice with respect to the plea offer.

A final point: Appellant's burden was to show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Here, appellant rejected the government's 25-year plea offer upon a belief that by proceeding to trial, he risked receiving a sentence of no more than 34 years. When the trial court agreed to that as the maximum sentence it would impose, appellant received the benefit of his counsel's erroneous advice; in essence, the advice was rendered correct, and the prejudice from it was dispelled. Given that result, and giving deference to the trial court's credibility-based factual finding that, per Mr. Downs's credited testimony, appellant was adamant that he

was innocent and "was not inclined to accept 25 years" when the government's plea offer was still on the table, we are confident that appellant has failed to demonstrate any *Strickland* prejudice from his trial counsel's erroneous advice.

## IV.   Conclusion

Wherefore, the judgment of the trial court is

*Affirmed.*