[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10164
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cr-20488-JLK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LI VALDES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 16, 2017)

Before MARCUS, WILLIAM PRYOR, and JORDAN, Circuit Judges.

PER CURIAM:

Li Valdes appeals his 57-month sentence, imposed after he pled guilty to one

count of conspiracy to possess ethylone with intent to distribute, in violation of 21

USC §§ 841(a)(1) and 846.  On appeal, Mr. Valdes argues that the district court

erred by calculating his base offense level using a conversion ratio of one gram of ethylone to 500 grams of marijuana, based on finding that 3, 4–methylendoxy–N–ethylamphetamine was the most closely related controlled substance to ethylone. He further argues that the district court abused its discretion in allowing the government's expert witnesses to testify, as their testimony was not helpful to any facts in issue.

We have already considered and rejected these arguments in the appeal filed by Mr. Valdes' co-defendant, and now affirm for the reasons stated in that opinion, a copy of which is attached. *See United States v. Brey*, No. 15-10165, 2015 WL 5521181, at *1 (11th Cir. Sept. 21, 2015).

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10165
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cr-20488-JLK-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ADIEL SANCHEZ BREY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 21, 2015)

Before MARCUS, WILLIAM PRYOR, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Adiel Sanchez Brey appeals his 43-month sentence of imprisonment, imposed after he pled guilty to one count of conspiracy to possess with intent to distribute ethylone. Because ethylone is not listed in the applicable sentencing guidelines, the district court, to determine Brey's base offense level, was required to convert the quantity of ethylone to its equivalent in marijuana by using the marijuana equivalency of the most closely related controlled substance listed in the guidelines. Brey's challenges on appeal all broadly relate to the district court's determination of the most closely related substance and the resulting conversion ratio the court applied. After careful review, we affirm.

## I.

Brey pled guilty to one count of conspiracy to possess with intent to distribute ethylone. According to the presentence investigation report ("PSR"), Brey admitted brokering a deal for one kilogram of "molly" between a confidential source and Brey's co-defendant, Li Valdes. The PSR states that "molly" is a term referring to several schedule I controlled substances and their analogues, including MDMA/ecstasy (3,4-methylenedioxy-methamphetamine), MDMC/methylone (3,4-methylenedioxy-methcathinone), and ethylone (1-(1,3-benzodioxol-5-yl)-2-(ethylamino)propan-1-one). Laboratory analysis revealed that the substance Valdes provided to Brey was ethylone, with a net weight of 999.3 grams.

2

Ethylone is not referenced in § 2D1.1 of the United States Sentencing Guidelines Manual ("U.S.S.G.), which provides the base offense level for drug offenses. When a controlled substance is not referenced in the guidelines, the court must "determine the base offense level using the marihuana equivalency of the most closely related controlled substance referenced in this guideline." U.S.S.G. § 2D1.1 cmt. n.6 ("Application Note 6"). In making that determination, the court must consider, "to the extent practicable," the following three factors: (1) chemical structure, (2) effect on the user (whether stimulant, depressant, or hallucinogenic), and (3) relative potency of the drug. *See id.*

The PSR concluded that the substance most closely related to ethylone was MDMC (methylone) and that ethylone had "half the potency of MDMA." PSR ¶ 18. One gram of MDMA is equivalent to 500 grams of marijuana, *see* U.S.S.G. § 2D1.1 n.8(D), so the PSR halved the MDMA ratio and found that one gram of ethylone was equivalent to 250 grams of marijuana. Applying the 1:250 ratio derived the equivalent of 249.825 kilograms of marijuana, for a base offense level of 24, which was reduced to a total offense level of 21 after application of a three-level reduction for acceptance of responsibility. With a criminal history category of III, Brey's advisory guideline range was 46 to 57 months' imprisonment.

The government objected to the PSR's conversion ratio. According to the government, ethylone was most closely related in structure and effect to MDEA,

3

an analog of MDMA, and should carry the same ratio of 1 gram of substance to 500 grams of marijuana. *See* U.S.S.G. § 2D1.1 cmt. n.8(D). The government acknowledged that no scientific data or literature existed on ethylone's potency, so there was no way to know if it was more or less potent than MDEA or methylone. Brey responded that a lower ratio should apply—either the 1:250 ratio applied by the PSR or a 1:125 ratio—because the available scientific evidence suggested that ethylone was at least half as potent as MDEA and MDMA. Brey agreed with the government that ethylone's chemical structure was most similar to MDEA, and he acknowledged that ethylone had a similar effect on the user as MDMA, MDEA, and methylone. But, according to Brey, potency was "the crucial factor in determining the conversion ratio to be applied." Doc. 56 at 13.

In anticipation of sentencing, the government noticed its intent to call two expert witnesses to testify about ethylone's chemical structure and its effect on the user. Brey moved to exclude the expert testimony under *Daubert*[1] and Rule 702 of the Federal Rules of Evidence. He contended that the only fact at issue was ethylone's potency, about which the experts could not testify given the lack of available scientific data or literature on the question. Thus, according to Brey, the expert testimony would not help the district court determine a fact in issue.

---

[1] *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 113 S. Ct. 2786 (1993).

4

At the sentencing hearing, the district court denied Brey's motion to exclude the expert testimony, stating that it did not know the controlled substances well and could benefit from the testimony. The government then called as expert witnesses Dr. Daniel Willenbring and Dr. Cassandra Prioleau, both drug-science specialists with the Drug Enforcement Agency.

Dr. Willenbring, a chemist, testified that ethylone and MDEA were very similar in chemical structure and that there was no drug in the guidelines that was a better match for ethylone than MDEA. The only difference between ethylone and MDEA, according to Dr. Willenbring, was the "beta Keto," an oxygen atom added to MDEA to make it ethylone. On cross-examination, Dr. Willenbring explained that potency could not be determined from chemical structure.

Dr. Prioleau, a pharmacologist, testified that ethylone "is expected to have a stimulant effect in the central nervous system that is substantially similar to that of MDEA." Doc. 97 at 21. Dr. Prioleau was not aware of any human or animal studies on the potency of ethylone, and she admitted that ethylone could be more potent than, less potent than, or equally as potent as MDEA or methylone.

After the experts testified, the government argued that the 1:500 ratio should apply because the first two factors under Application Note 6, chemical structure and effect on the user, favored the government, while the third factor, potency, was an "unknown" that should be considered "neutral," so "the scales tip in favor of the

Government."  *Id.* at 30.   The government asserted that ethylone's unknown potency should not benefit Brey, because the risk and danger of these substances is that young people take these pills, which are shipped over from China, without knowing what they actually contain.  Brey responded that the government had the burden of proving its proposed finding by a preponderance of the evidence, and that "the issue of potency is a guess" that "does not rise to the level of . . . a preponderance standard."  *Id.* at 31.  He argued that the district court should take a conservative approach and apply the 1:250 ratio.

The district court sustained the government's objection, finding that the government had "established by reasonable and reliable expert opinion that the ratio should be 1 to 500."  *Id.* at 36.  The court explained its conclusion as follows:

> The Court finds that the three factors that the Court must consider have been considered. The first two factors under this evaluation were not in contest; it was the third factor that was in contest.
>
> The Court finds that the substance ethylone is appropriately and more properly considered in relation to the listed substance of MDEA [than] otherwise.

*Id.* at 37. At the court's request, the probation officer recalculated Brey's total offense level to be 23, resulting in a guideline range of 57 to 71 months' imprisonment.  The district court granted a downward departure based on the government's substantial-assistance motion, pursuant to U.S.S.G. § 5K1.1, and sentenced Brey to 43 months' imprisonment.  Brey now brings this appeal.

6

## II.

## A.

Brey first contends that the district court failed to make factual findings required by Rule 32(i)(3)(B), Fed. R. Crim. P., in support of its chosen conversion ratio of 1 gram of ethylone to 500 grams of marijuana.[2] We review a district court's compliance with Rule 32(i) *de novo*.[3] *See United States v. Vincent*, 121 F.3d 1451, 1453 (11th Cir. 1997) (citing a previous version of the rule).

Under Rule 32(i)(3)(B), the district court at sentencing must, "for any disputed portion of the presentence report or other controverted matter," explicitly rule on the dispute or determine that a ruling is unnecessary because the matter will not be considered in sentencing the defendant. If the district court fails to make an express finding as to the disputed portion, remand for compliance with the rule

---

[2] Brey cites to former Fed. R. Crim. P. 32(c)(3)(D), which was in effect from 1983 to 2002. *See* Fed. R. Crim. P. 32, advisory comm. notes, 1983 & 2002 Amends. As part of the restyling of the Criminal Rules in 2002, the general rule of Rule 32(c)(3)(D), with some amendment, was incorporated into current Rule 32(i)(3)(B). *Id.*, 2002 Amend. We therefore construe Brey's challenge as under Rule 32(i)(3)(B).

[3] The government contends that plain-error review applies because Brey did not object to the court's failure to make supporting factual findings at sentencing. Where a defendant raises an objection for the first time on appeal, we ordinarily review for plain error only. *United States v. Peters*, 403 F.3d 1263, 1270 (11th Cir. 2005). To be eligible for plain-error relief, the defendant must show that (1) an error occurred, (2) the error was plain, and (3) the error affects substantial rights. *Id.* at 1270-71. We do not decide whether plain-error review applies because Brey has not shown that the district court erred, plainly or otherwise.

7

may be appropriate. *See Shukwit v. United States*, 973 F.2d 903, 905 (11th Cir. 1992).

Here, the district court complied with Rule 32(i)(3)(B). The only disputed portion of the PSR concerned what marijuana conversion ratio should apply to ethylone. After hearing testimony from the experts and argument from the parties relevant to that issue, the district court clearly resolved this dispute by adopting the government's favored 1:500 ratio and recalculating the PSR based on that ratio. Thus, the court "rule[d] on the dispute" in accordance with Rule 32(i)(3)(B).

Brey contends that he cannot meaningfully challenge, and we cannot meaningfully review, the district court's conclusion as to the applicable conversion ratio because the court did not make any factual findings as to potency or discuss how potency factored into its decision. *See, e.g.*, *United States v. Reid*, 139 F.3d 1367, 1368 (11th Cir. 1998) ("We cannot engage in meaningful appellate review of a sentence unless the district court sets out the facts underpinning the guidelines it applied in fashioning the defendant's sentence or the record plainly establishes such facts."). We disagree. The record shows that the court agreed with the government that ethylone is most closely related to MDEA in chemical structure and effect on the user. *See* U.S.S.G. § 2D1.1 cmt. n.6. On this basis, the court concluded that MDEA's 1:500 ratio should apply, despite the uncertainty regarding ethylone's potency. Brey simply disagrees with the court's conclusion that the

8

government met its burden of proof without presenting any evidence of ethylone's potency. We turn to that issue now.

## B.

Brey argues that the district court clearly erred in determining that MDEA was the most closely related substance to ethylone under Application Note 6 to § 2D1.1 because the government did not put forth any evidence establishing ethylone's potency.

In considering issues under the Sentencing Guidelines, we review the district court's factual findings for clear error and its application of the sentencing guidelines *de novo*.[4] *United States v. Gupta*, 572 F.3d 878, 887 (11th Cir. 2009). For a factual finding to be clearly erroneous, we must be "left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted). A district court's choice between two permissible views of the evidence cannot be clear error. *United States v. Ndiaye*, 434 F.3d 1270, 1305 (11th Cir. 2006).

The government must prove a contested fact in the PSR that would increase a defendant's sentence by a preponderance of the evidence. *Gupta*, 572 F.3d at

---

[4] Although we have not expressly held in a published opinion that a district court's determination of the "most closely related controlled substance" under Application Note 6 to § 2D1.1 is a factual finding reviewed only for clear error, the parties both urge that clear-error review applies, and we agree.

887.   The government must satisfy this burden with "reliable and specific evidence."  *Id.* (internal quotation marks omitted).

As explained above, when a drug is not specifically referenced in the drug-quantity table under § 2D1.1(c), the district court is tasked with converting the quantity of the controlled substance to its equivalent in marijuana by using the marijuana equivalency of the "most closely related controlled substance referenced in this guideline."  U.S.S.G. § 2D1.1 cmt. n.6 & n.8(A).  To determine the most closely related substance,

> the court shall, to the extent practicable, consider the following:
>
> (A)    Whether the controlled substance not referenced in this guideline has a chemical structure that is substantially similar to a controlled substance referenced in this guideline.
>
> (B)    Whether the controlled substance not referenced in this guideline has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.
>
> (C)    Whether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled substance referenced in this guideline.

*Id.* cmt. n.6.

10

Here, the district court did not clearly err in determining that ethylone is most closely related to MDEA and so should carry the same conversion ratio of 1 gram of substance to 500 grams of marijuana. The government produced reliable and specific evidence of the first two factors, chemical structure and effect on the user, which Brey does not challenge. Instead, Brey's challenge rests on the government's failure to put forth any evidence of potency, without which, he contends, the government did not meet its burden of proving the application of the 1:500 ratio with reliable and specific evidence.

But Brey's argument that the lack of evidence of potency is fatal to government's position—and the district court's ultimate conclusion—is not supported by the commentary to § 2D1.1. Application Note 6 does not impose an absolute duty on the government to produce evidence about all three factors; rather, it requires only that the district court consider the three factors "*to the extent practicable*." U.S.S.G. § 2D1.1 cmt. n.6 (emphasis added). The guidelines thus recognize "that, in some circumstances, sentencing courts will be unable to match substances under each of the factors." *United States v. Chowdhury*, 639 F.3d 583, 586 (2d Cir. 2011). In short, the absence of specific and reliable evidence as to one of the factors, such as potency, does not preclude a court from making a determination as to the most closely related controlled substance under Application Note 6. *See id.* (holding that the district court did not clearly err in substituting

11

MDMA for the substance in question despite the "absence of a substance with a substantially similar chemical structure, or reliable information regarding the relative potency of the two substances" (internal citations omitted)).

Given MDEA's and ethylone's similar chemical structure and effect on the user, we are not left with a definite and firm conviction that the district court made a mistake in finding that MDEA was the "mostly closely related controlled substance" to ethylone under Application Note 6 to § 2D1.1, despite the lack of evidence as to relative potency.[5]  *See* U.S.S.G. § 2D1.1 cmt. n.6.

## C.

Finally, Brey argues that the district court abused its discretion in admitting the testimony of the government's experts.  We review for an abuse of discretion the district court's decisions as to the admissibility of expert testimony and the reliability of an expert opinion.  *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (*en banc*).

Rule 702 of the Federal Rules of Evidence controls the admission of expert testimony.  It provides that a qualified expert may testify in the form of an opinion or otherwise if

---

[5] Brey points to a decision by another district judge in the same district finding that a 1:200 ratio should apply to ethylone, but the evidence before the courts in the two cases differed, and, in any event, the clear-error standard allows for courts to come to different conclusions as long as the conclusions are supported by substantial evidence in the record, as they are here.  We emphasize that we do not hold generally that courts should apply a 1:500 ratio for ethylone. Instead, we hold only that, based on the specific record in this case, the district court did not clearly err in determining that MDEA was the appropriate substitute substance.

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Thus, in considering the admissibility of expert testimony under Rule 702, district courts must consider three basic requirements: qualification, reliability, and helpfulness to the factfinder. *Frazier*, 387 F.3d at 1260.

Here, the district court did not abuse its discretion by admitting the expert testimony of government witnesses Dr. Willenbring and Dr. Prioleau. Brey does not dispute that the experts were qualified. We also readily conclude that their testimony was helpful to determine a fact in issue. Brey's contention that only potency was at issue is unpersuasive. To determine the "most closely related controlled substance" to ethylone under Application Note 6, the district court was required to consider, in addition to potency, whether ethylone had a chemical structure and an effect on the user's central nervous system that were similar to a referenced substance. The expert testimony went directly to these two relevant factors and was the basis for the government's assertion that the 1:500 ratio should apply. In other words, the expert testimony clearly was relevant and helpful to determining a fact in issue.

13

The fact that Brey "stipulated" to the government's position regarding chemical structure and effect on the user does not, for several reasons, preclude the court from hearing expert testimony regarding these factors. First, no formal stipulation was entered into the record, so the government still needed to meet its burden with reliable and specific evidence. Second, Brey's "stipulation" was weaker than the expert testimony, at least with respect to effect on the user. Specifically, Brey admitted that ethylone had a similar effect on the central nervous system to MDMA, MDEA, **and** methylone. But Dr. Prioleau's testimony focused on the substantial similarity between ethylone and MDEA, which is more favorable to the government's position. Third, "the accepted rule [is] that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away." *Old Chief v. United States*, 519 U.S. 172, 189, 117 S. Ct. 644, 654 (1997). Finally, even if Brey's stipulation was sufficiently effective, the court still was required to determine the most closely related referenced controlled substance to ethylone, which, in turn, requires some familiarity with the substances that the court is supposed to compare. Here, the district court indicated that it was unfamiliar with the substances, so the expert testimony was helpful to the court in understanding the substances for purposes of making a determination under Application Note 6.

14

Nor did the experts testify as to matters outside of their expertise on issues of potency, as Brey suggests.  Dr. Willenbring limited his opinion on the articles Brey filed to the portion he could comment on as a chemist.  He stated three times that potency was outside of his field and declined to speculate as to ethylone's potency.  Dr. Prioleau testified only that there was no existing data for anyone to reliably determine the potency of ethylone.  Brey's challenge to the reliability of Dr. Prileau's opinion is based on a misunderstanding of her testimony.  Dr. Prioleau testified that *in vitro* studies—conducted outside of a living organism—are helpful to determine the possible effects a drug may have, but they are not reliable for determining potency because potency depends on complex interactions between multiple systems in the body.  Consistent with this testimony, Dr. Prioleau explained that her opinion about the expected effects of ethylone was based on *in vitro* studies and that Brey's proffered *in vitro* studies did not reliably show potency.

Overall, we find no abuse of discretion in the district court's admission of expert testimony from Dr. Willenbring and Dr. Prioleau.[6]

### III.

In sum, we **AFFIRM** Brey's sentence.

---

[6] Brey also makes a passing reference that the government did not comply with its disclosure obligations relating its experts because it failed to provide a copy of the *in vitro* studies on which Dr. Prioleau based her opinion.  Such a passing reference is insufficient to raise the issue for appellate review.  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).