Opinion for the court by
Associate Judge FISHER.
Dissenting opinion by Senior Judge Ruiz at page 96.
*89 Fisher, Associate Judge:
After a bench trial, appellant Ross Green was convicted of, among other offenses, possession of 3, 4-methyienedioxy-methcathinone hydrochloride (“MDMC”) with intent to distribute (“PWID”), a felony.[1] He did not file a direct appeal, but now challenges the denial of his motion for a new trial. We affirm.
I. Background

A. The Trial

On September 20, 2012, police officers entered appellant’s home to' execute a search warrant and seized an assortment of pills, tablets, and capsules of various colors, and a pink ziplock bag of orange powder. (The conviction under review here relates only to MDMC.) The police also seized a digital scale, an assault rifle, a handgun, magazines for the rifle and handgun, and assorted ammunition. Danielle LaVictoire, who was qualified without objection as an expert in controlled-substance analysis, testified that one partial tablet, two capsules, and the ziplock bag of powder tested positive for MDMC. Her report, admitted as Exhibit 2.2, described the drug more formally as “3, 4-methyl-enedioxymethcathinone (methylone) hydrochloride.” She also said that, based on the amount of MDMC powder in the two capsules found in Green’s apartment, “you might be able to make 82 capsules worth” of MDMC from the quantity of powder in the ziplock bag.[2]
Detective George Thomas was qualified without objection as an expert in the distribution and use of illegal drugs. He testified that MDMC is a different compound than methylenedioxymethamphetamine (“MDMA” or “ecstasy”), but that they are chemically similar—MDMC is only “one analog or one compound different from Ecstasy or MDMA.” He also testified that MDMC is more potent than MDMA, that the “street name” for MDMC is “molly,” and that the amount of MDMC found in appellant’s apartment was inconsistent with possession for personal use. The cell phone seized from appellant’s apartment contained numerous text messages, from May and June of 2012, in which he discussed selling a variety of drugs, including “molly,” to other individuals. Those text messages did not use the initials MDMC.
Appellant called Dr. Jeffrey Smith, an expert in internal and emergency medicine and continued care, to testify that appellant had prescriptions for many of the drugs seized from his apartment, though not for the MDMC. Although appellant’s counsel adamantly asserted that MDMC was not “molly,” he presented no evidence to support that claim and called no other witnesses. Appellant did not testify.
When announcing his finding on June 12, 2013, Judge Richter observed that “the evidence is overwhelming ... that the MDMC was possessed with the intent to distribute.” He commented that while “the quantity alone might not be enough, [and] *90 the text messages alone might not be enough, .., together they clearly constitute proof beyond a reasonable .doubt.”

B. The Motion for a New Trial

On June 17, 2013, five days after .the finding of guilt, appellant asked the court to extend the deadline for filing a motion for a new trial. The court granted the request on June 19, giving appellant until September 9 to file a Rule 33 motion. Appellant’s new counsel asked for a second extension on July 8, and the court granted that enlargement of time on July 9, giving appellant until October 9 to file his motion for a new trial.
Nearly four months after the finding of guilt, on October 9, 2013, appellant filed a motion for a new trial pursuant to Super, Ct. Crim. R. 33 (“Rule 33”). With that motion, he submitted an affidavit, signed on October 7, 2013, from Michael Radon, who had over forty years of experience working as a substance-abuse counselor or supervisor in Massachusetts, the West Indies, and Maryland. Since 2011, Mr. Radon has worked as a consultant and expert witness. He averred that “molly” was the street name for MDMA, not MDMC, and that the two substances had “unique, non-overlapping street names.”
Appellant also submitted the affidavit of Dr. Wayne Duer, a forensic toxicologist in Florida, signed on October 4, 2013, who said that the quantity of MDMC found in appellant’s apartment “typically would yield significantly less than between 16 and 41 capsules, tablets or caplets of MDMC.” He based this statement on “a DEA publication” about the amount and form in which MDMC is normally distributed and his prediction that some powder would be lost in the process of filling the MDMC capsules. Both proposed experts stated in their affidavits that MDMC was one of a class of drugs to which users were known to develop a tolerance, thus necessitating taking more of the drug to achieve the same “high.” As Judge Richter commented, these statements about tolerance and typical dose seem to be intended as “new evidence suggesting personal use.”
In addition to asserting that “molly” is not used to refer to MDMC, appellant’s motion for a new trial attacked other aspects of Detective Thomas’s testimony. Thomas had - said that MDMC is more potent than MDMA, but the affiants swore the opposite was true. The detective also testified that MDMC is not methylone, but Dr. Duer swore that “MDMC is methy-lone.”
After briefing- by the parties, Judge Richter denied the motion in a short order, concluding that “[t]hese new assertions, even if presented at trial, would not have resulted in a different verdict.” “Even if there had been some confusion in Detective Thomas’ testimony regarding MDMA and MDMC,” Judge Richter noted, “the evidence is still clearly convincing that MDMC was possessed.with .the,intent to distribute.’’ Appellant had “also attack[ed], for the first time post-trial, the chemist’s testimony regarding the MDMC and presented] new evidence suggesting personal use.” Nevertheless, “[g]iven the testimony presented at trial, the evidence of PWID is more than sufficient and convincing.” In sum, appellant’s “post-trial change in tactics for meeting the Government’s evidence is both too late and insufficient.”
II. Analysis
The “trial court’s denial of a motion for new trial is reviewed for abuse of discretion. We will not reverse if the denial is reasonable and supported by the record.” Tyer v. United States, 912 A.2d 1150, 1166 (D.C. 2006). “In general, a trial' court does not need to hold a hearing, before ruling on a motion for new trial,” Geddie v. *91 United States, 663 A.2d 531, 534 (D.C. 1995). The moving party bears the burden of persuasion. Tyer, 912 A.2d at 1167.

A.Appellant’s Arguments

Appellant posits that the affidavits attached to his Rule 33 motion negated crucial evidence presented by the government at trial. First, he asserts that the text messages about “molly” did not indicate his intent to distribute MDMC because “molly” is MDMA, not MDMC. Thus, he assumes these text messages must be ignored altogether. Second, he contends that the quantity of MDMC he possessed, standing alone, is insufficient, as a matter of law, to prove his intent to distribute. He argues, therefore, that his PWID conviction should be vacated due to insufficient evidence and the case remanded for entry of a judgment of guilt for the lesser-included offense of misdemeanor possession of MDMC. In the alternative, he seeks a new trial on the PWID charge.

B.The Evidence Was Sufficient

Appellant argues that the evidence was insufficient to prove his intent to distribute MDMC. It is not at all clear that he is entitled to raise this issue now, having failed to take a direct appeal. We need not decide this issue, however, because his argument is founded on an erroneous premise. He asks us to consider the trial record not as it actually exists, but as it might have existed if the affidavits he submitted were testimony that had been presented at trial and credited by the trial court. But we do not decide sufficiency challenges based on a hypothetical record; instead, we review the evidence that was before the fact-finder when it made its finding of guilt. See, e.g., Vest v. United States, 905 A.2d 263, 266 (D.C. 2006) (“It is only where the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt that this court can reverse a conviction.” (brackets and citation omitted)); cf. Best v. United States, 66 A.3d 1013, 1019-20 (D.C. 2013) (in determining whether the Double Jeopardy Clause would, bar a retrial, “[w]e evaluate sufficiency based on the evidence that was before the trial court, even if it was admitted erroneously”) (citing Lockhart v. Nelson, 488 U.S. 33, 40-42, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988)). Appellant makes no effort to demonstrate that the evidence actually in the trial record was insufficient to support his conviction for PWID. See Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (explaining that reversal for insufficient evidencé is appropriate only if, “upon the record evidence adduced at the trial[,] no rational trier of fact could have found proof of guilt beyond a reasonable doubt”);

C.The New Trial Motion

1. Which Standard Applies?
Rule 33 allows the trial court to grant a new trial to a defendant “if the interests of justice so require” or “based on newly discovered evidence.” Super. Ct. Crim. R. 33. A motion based on the interests of justice “may be made only within 7 days after the verdict or finding of guilty or within such further time as the Court may fix during the 7-day period.” Id. “A motion for a new trial based on newly discovered evidence may be made only before or within three years after the verdict or finding of guilty.” Id.
Here, the court granted appellant’s first extension during the time period prescribed in Rule 33, but the second extension was approved well outside the seven-day limit set by the rule. Ordinarily, the delay in filing the motion for a new trial would alter the standard by which the motion is judged. Under the circumstances *92 of this case, however, the government has forfeited any argument that appellant’s motion for a new trial was filed too late to be judged under the “interests of justice” standard.[3] We, therefore, are not constrained by the stricter standard that applies to motions based on newly discovered evidence.[4]
2. The Interests of Justice
Many of our decisions applying Rule 33’s interests of justice standard involve motions filed after jury verdicts. In that context, when “evaluating the interests of justice, the trial court—sitting as a thirteenth juror—determines whether a fair trial requires that the [additional] evidence be made available to the jury.” Ingram v. United States, 40 A.3d 887, 902 (D.C. 2012) (brackets and citation omitted). When a case has been tried without a jury, the court is not limited to starting afresh if it decides that a new trial should be granted. Instead, it may “vacate the judgment, take additional testimony, and direct the entry of a new judgment.” Super. Ct. Crim. R. 33. In this case, Judge Richter did not reopen the record and enter a new judgment, but considered the newly proffered’ evidence, then denied the motion.[5]
Our precedents have repeatedly cautioned that the power to grant a new trial in the interests of justice is “temperately to be utilized.” See Sellars v. United States, 401 A.2d 974, 979 (D.C. 1979); Brodie v. United States, 295 F.2d 157, 160 (D.C. Cir. 1961); Benton v. United States, 188 F.2d 625, 627 (D.C. Cir. 1951). “The rules do not define ‘interests of justice!,]’ and courts have had little success in trying to generalize its meaning.” United States v. Wheeler, 753 F.3d 200, 208 (D.C. Cir. 2014) (internal quotation marks omitted) (applying Fed. R. Crim. P. 33).[6] “But a new trial will be ordered in the interest of *93 justice only when, after considering the evidence, the court can find that ‘exceptional circumstances’ prevented the defendant from receiving a fair trial.” Tyer, 912 A.2d at 1167.
Perhaps unsurprisingly, our precedents do not cabin or clearly describe the “exceptional circumstances” that will justify granting a new trial in the interests of justice. “The facts are of critical importance to our consideration of the appeal[,] particularly if we are not limited to the ‘newly discovered evidence’ standards for granting a new trial.” Brodie, 295 F.2d at 158. However, some guiding principles emerge from decisions issued over the last sixty-five years.
In Benton, the court remanded for a new trial where, four days after the verdict, the defendant submitted an affidavit from the victim’s mother declaring her belief that her twelve-year-old daughter had not been sexually assaulted. 188 F.2d at 626-27. The mother attended the trial and, at the close of its case, the government tendered her to the defense as a potential witness, but the defense did not call her to testify. Id. at 626. In her affidavit, the mother noted disparities between her memory of the events surrounding the alleged sexual assault and her daughter’s testimony at trial. Id. at 626-27. Most importantly, the mother attested: “[I]n my opinion, my conscience does not allow me to believe that anything happened to my girl on that night. I heard what Mr. Benton said, and I heard what my daughter said.” Id. at 627.
The court of appeals found the situation “exceptional” because the conviction rested almost entirely on the victim’s testimony; which had been disputed by testimony from the accused. The opinion emphasized that
[w]hen in such a case as this the additional evidence brought to the court’s attention is that of the mother, who saw and talked to the child shortly after the alleged incident, and this evidence varies substantially from that given by the child, upon which the conviction rests almost entirely, we think a fair trial requires that the mother’s testimony be made available to the jury.
Benton, 188 F.2d at 627 (referring to these circumstances as “special factors” justifying the unusual action of reversing the trial court and ordering a new trial) (footnotes omitted). The court appeared to be influenced, at least in part, by the prevailing rule at the time, that a person could not stand convicted of such an offense “unless the [child’s] testimony is corroborated or otherwise strong and convincing.” Id. at 627 n.2. We have since abolished the corroboration requirement for sexual offenses, Gary v. United States, 499 A.2d 815, 833-34 (D.C. 1985). (en banc), so it is fair to question whether a new trial would have been ordered under current law.
The decision in Brodie dealt with an uncommon claim of misidentification.-With-in forty-eight hours after his conviction at a bench trial, the defendant moved for a new trial based on “newly discovered evidence.” 295 F.2d at 159. He had repeatedly denied involvement in the crime, and men who claimed to have actually committed the offenses (or to have been present) offered to testify on his behalf. Id. at 158-59. The trial judge denied the motion due to a “lack of diligence” by defense counsel. Id. at 159.
Recognizing that the “newly discovered evidence” label placed on the motion “may have misled the [trial judge] to apply the strict and narrow standards of due diligence rather than view the motion ... as one which invoked broader discretionary powers,” the court of appeals remanded the case “with all its puzzling aspects” for *94 further consideration applying the “interests of justice” standard. 295 F.2d at 160. In doing so, the court noted that, althoúgh appellant would not have “the burden of showing his own diligence” under this more liberal standard, “the element of diligence, while still present, might well be but one of a number of factors to be considered ....” Id. at 159, 160.
More recent decisions have focused on external pressures which may have interfered with an appellant’s ability to present a full defense. In Lyons v. United States, 833 A.2d 481 (D.C. 2003), defense counsel represented both before and after trial that the defendant was afraid to exonerate himself because of threats against him, his family, and a witness.. Id. at 484-85 & n.5, 488. Recognizing that the defendant had been denied a fair trial if these allegations were true, we remanded the case for the trial court to conduct , á “hearing to determine if [the defendant’s] claims of fear and intimidation were credible.” Id. at 488-89. See also Geddie, 663 A.2d at 532 (defendant sought “a new trial on the ground that threats from his co-defendant ... deprived him-of his right to testify and his right to a fair trial”).
The desire to present a better defense. is not, without more, a sufficient basis for granting a new trial. In Huggins v. United States, 333 A.2d 385 (D.C. 1975), a police officer’s testimony at the' defendant’s second trial was inconsistent with his testimony at the first trial. Defense counsel failed to impeach the officer with his prior testimony although counsel had a transcript of the earlier proceeding. Id. at 386. We evaluated .the motion for new trial under both the “newly discovered evidence” and “interests of justice” standards, and held that relief was not warranted under either. The belated discovery of the contradictory statements did not qualify as newly discovered evidence because counsel had exhibited a lack of due diligence. Id. at 387. Nor did the motion qualify under the interests of justice standard, because “it is only under exceptional circumstances where, considering the evidence, the defendant did not receive a fair trial, that a new trial will be ordered,” and there was “no showing that [the officer’s testimony] was perjurious,” or “that an acquittal would necessarily follow.” Id.
The decision in Benton appears to have been the most generous in concluding that the interests of justice required a new trial. But that decision was based upon a very peculiar set of circumstances. It did not establish a rule allowing a “do-over” simply because a defendant is dissatisfied with the outcome and only then decides to look for evidence to support his case. As our case law demonstrates, “a new trial ... in the interest of justice” will be justified only if ‘“exceptional circumstances’ prevented the defendant from receiving a fair trial.” Tyer, 912 A.2d at 1167.
3. Appellant Is Not Entitled to Relief
Appellant has completely failed to meet that standard. This record is not comparable to the unique scenario presented in Benton. There was no question of misidentification. No codefendant intimidated appellant or prevented him from presenting a full defense. The evidence he submitted after trial was equally available prior to trial. In short, nothing interfered with appellant’s ability to present his defense. Indeed, he won acquittals or partial acquittals on many of the charges against him. See note 1, above.
Appellant’s counsel cross-examined the two government experts who testified about the drugs. However, he presented no evidence to refute the government’s testimony that “molly” could refer to MDMC. Plainly believing that- Detective Thomas’s testimony was mistaken, -counsel *95 nonetheless elected not to request a continuance so he. could locate witnesses to expose the purported inaccuracy (or, perhaps, to testify about the quantities in which MDMC was normally sold):
[Defense Counsel]: I’ll go to my grave on this count and the fact that Molly is some completely other drug. And in the event of an adverse verdict, I’ll post trial this—
The Court: I mean, instead of saying you’ll go to your grave and swearing and—you’re not a witness in this case. On this evidence, I have the expert saying it’s Molly, I have this unprescribed drug that they’ve analyzed saying it’s this, that this is what they’re talking about, and I have no evidence to the contrary.
Despite the court’s indisputably accurate observations, appellant made no effort to contest these issues at trial, choosing instead to “post trial” the issue, represented by pew counsel. Although appellant is not required to demonstrate his own diligence under the interests of justice standard, diligence is a valid factor for the trial court, and this court, to consider. See Brodie, 295 F.2d at 160. Even assuming, for the sake of argument, that defense counsel, having read the text messages, reasonably thought that an expert in drug trafficking would not be necessary to gain a partial acquittal for his client on the PWID MDMC charge (leaving only the lesser-included offense of misdemeanor possession), and further assuming that he was surprised by the testimony of the government’s experts, nothing prevented counsel from requesting time to find and call- appropriate rebuttal witnesses. Such a request could have been more easily accommodated in a bench trial.such as this than in a jury trial.[7] ..
Here, as Judge Richter recognized; appellant’s motion reflected a “post-trial change in tactics.” Appellant’s regret that he did not present a better defense at trial is not an “exceptional circumstance,” and thus, as the court properly concluded, it does not entitle him to a new trial.
Judge Richter was not required to hold á hearing before denying the motion. See Prophet v. United States, 707 A.2d 775, 779 (D.C. 1998) (“We have upheld the denial of a Rule 33 motion without a hearing when the trial court, after examining the proffered affidavit of a witness, concluded that the material contained in the affidavit would not ‘in all likelihood’ result in an acquittal.” (citing Poteat v. United States, 363 A.2d 295, 297 (D.C. 1976)). Having recently conducted the bench trial in this case, 'Judge Richter was well-positioned to evaluate the proffered affidavits, and he concluded that “[t]hese new assertions, even if presented at trial, would not have resulted in a different verdict.”
More importantly, Judge Richter recognized that the motion represented a “post-trial change in tactics.” As we have demonstrated, appellant’s new attack on this one charge did not meet the “exceptional circumstances” test. This was apparent from an examination of the affidavits and the court’s thorough knowledge of the .trial record, which together provided the court sufficient information to evaluate appellant’s claim to a new trial.
Therefore, in order to determine that “the interests of justice” did not “require” a new trial, it was not necessary to further litigate whether appellant and his friends (and others) used the term “molly” to refer *96 to MDMC, MDMA, or both.[8] Nor was it necessary to reiterate the direct and circumstantial evidence that appellant was selling MDMC (a drug chemically similar to MDMA) in capsules containing .1 gram of powder. Dr. Duer’s understanding that MDMC is often (or even typically) distributed in larger quantities would not undercut this evidence demonstrating the customs of appellant and his buyers.
III. Conclusion
On this record, we cannot say that exceptional circumstances prevented appellant from receiving a fair trial. The trial court did not abuse its discretion in denying the motion for a new trial, or in doing so without first holding a hearing. The judgment of the Superior Court is hereby

Affirmed.

. D.C. Code § 48-904.01 (a) (2012 Repl.). Appellant was also convicted of a number of misdemeanor charges involving drugs and guns, but he does not contest those convictions. Appellant was acquitted entirely of two PWID charges related to other drugs and four were reduced to the lesser-included offense of possession. He was also acquitted of the corresponding charges of possession of a firearm during a crime of violence and "while armed” enhancements.

, She arrived at this estimate by dividing the 8.2 grams of powered MDMC in the ziplock bag by the 0.1 grams found in each MDMC capsule. Appellant now challenges this estimate and Ms. LaVictoire's qualifications to provide it. However, appellant did not object to her expertise at trial, nor did he present any evidence to rebut her estimate that the powder might produce 82 capsules.

. Court rules containing time limits have been separated into two categories: jurisdictional or claim-processing. Smith v. United States, 984 A.2d 196, 199 (D.C. 2009). ‘“[Cjlaim-processing’ rules are 'court-promulgated rules,' ‘adopted by the Court for the orderly transaction of its business.’ ” Id. at 200 (quoting Bowles v. Russell, 551 U.S. 205, 211, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007)). " '[C]laims-processing rules[]’ ... do not limit a court’s jurisdiction, but rather regulate the timing of motions or claims brought before the court. Unless a party points out to the court that another litigant has missed such a deadline, the party forfeits the deadline’s protection.” Dolan v. United States, 560 U.S. 605, 610, 130 S.Ct. 2533, 177 L.Ed.2d 108 (2010) (citing, as an example, the Supreme Court’s holding in Eberhart v. United States, 546 U.S. 12, 19, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005), that Fed. R. Crim. P. 33 (b)(2) is a "claims-processing rule”). The time limits in Rule 33, therefore, may be forfeited by a party otherwise entitled to enforce them.

. The requirements of this more rigorous test are: "(1) the evidence must have been discovered since the trial; (2) the party seeldng the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be" merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such nature that in a new trial it would probably produce an acquittal.” Godfrey v. United States, 454 A.2d 293, 299 n.18 (D.C. 1983) (citation omitted).

. In his order denying the new trial motion, Judge Richter remarked that “the evidence is still clearly convincing that MDMC was possessed with the intent to distribute.” Focusing on this language, appellant argues that the trial court did not apply the correct "standard of guilt.” This argument misconstrues Judge Richter’s order. The court had not vacated the judgment and was not making a new finding of guilt, to which the burden of proof beyond a reasonable doubt would apply. Instead, Judge Richter was explaining why he had decided to deny appellant’s motion for a new trial. It was appellant’s burden to persuade the court to grant that motion. Tyer, 912 A.2d at 1167.

. Fed. R. Crim. P. 33 is almost identical to Super. Ct. Crim. R. 33.

. Appellant does not raise a claim of ineffective assistance of counsel, and we could not address that question without a fully developed record on the issue. See Mack v. United States, 570 A.2d 777, 785-86 (D.C. 1990).

. Although Judge Richter did not rely on such cases, we note judicial decisions indicating that ''molly'' has been used to refer to MDMC. See, e.g., United States v. Brey, 627 Fed.Appx. 775, 776 (11th Cir. 2015) ("The PSR states that ‘molly’ is a term referring to several schedule I controlled substances and their analogues, including MDMA/ecstasy (3, 4-methylenedioxy-methamphetamine) [and] MDMC/methylone (3, 4-methylenedioxy-methcathinone)[.]”); United States v. Abbott, 613 Fed.Appx. 817, 818 (11th Cir. 2015) (challenging conviction “for conspiracy to possess with intent to distribute 3, 4-methyl-enedioxy-N-methylcathinone (‘methylone’ or 'Mollies,' a schedule I controlled substance similar to ecstasy)”); United States v. Chong, 990 F.Supp.2d 320, 321 (E.D.N.Y. 2014) (" 'Molly' is a term used by users, suppliers, and law enforcement for methylone.... It is associated with a variety of chemical substances ....”); Glispie v. State, 335 Ga.App. 177, 779 S.E.2d 767, 771-72 (2015) (text messages referring to "molly’’; capsules "tested positive for 3, 4-methylenedioxymethcathi-none, commonly known as methylone or ‘Molly’ ”).