*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

Nos. 19-CO-713 & 20-CO-349

MARQUELL GREENE, APPELLANT,

V.

UNITED STATES OF AMERICA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2016-CF3-11579)

(Hon. Kimberley S. Knowles, Trial Judge)

(Submitted November 19, 2021                    Decided  August 4, 2022)

*Thomas D. Engle* and *Sharon L. Burka* for appellant.

*Elizabeth Gabriel*, Assistant United States Attorney, *Michael R. Sherwin*, Acting United States Attorney at the time, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, *Brittany Keil*, *John P. Gidez*, Assistant United States Attorneys, for appellee.

Before EASTERLY, MCLEESE, and DEAHL, *Associate Judges*.

DEAHL, *Associate Judge*:  A jury convicted Marquell Greene of assault with intent to rob while armed and a host of subsidiary charges.  The trial court sentenced him to thirteen years' incarceration.  Shortly after the jury rendered its verdict, Greene filed a motion for a new trial under D.C. Super. Ct. Crim. R. 33, which

highlighted that two other men had confessed to the crimes. Greene later filed a motion to vacate and set aside his convictions under D.C. Code § 23-110. That motion argued, in part, that Greene's trial counsel was ineffective in failing to investigate a lead—and present evidence—that those same two men were the real perpetrators. The trial court denied both motions, and Greene now appeals. We vacate both orders and remand for further proceedings.

## I.

A grand jury indicted Marquell Greene for assault with intent to rob while armed, among other offenses. The government alleged that Greene posted an online notice advertising a Lexus for sale, and then lured Donald Pinkney to a meeting place under the pretense of selling him that car. At trial, Pinkney testified that he arrived at the meeting place with his eight-year-old daughter in tow, and the two of them exited their car to inspect the Lexus. Greene then held the two of them at gunpoint and tried to rob Pinkney. Greene threw Pinkney to the ground, but eventually Pinkney escaped with his daughter into a nearby building. Pinkney was left with "some scrapes," and his daughter was uninjured.

Greene maintained that he was not the perpetrator and that Pinkney, who picked Greene as his assailant from a photo array, had misidentified him. But

considerable evidence supported Pinkney's identification of Greene as his assailant. For instance, the "bait car" that was listed for sale and brought to the scene was registered to Greene; the username of the person selling the car online was marquell_greene@yahoo.com; and a GPS tracking device worn by Greene indicated that he was in the immediate area when the assault occurred.

In the lead-up to trial, Greene's girlfriend and a man named Deangelo Johnson approached Greene's trial counsel, Rebecca Bloch. Johnson told Bloch that it was he, rather than Greene, who committed the offenses. Bloch, who had viewed surveillance video capturing a portion of the assault, told Johnson that he was obviously not the perpetrator—Johnson was short with long hair, while the assailant caught on camera was tall with short hair. At that point, Johnson turned to Greene's girlfriend and said, "You didn't tell me they had it on video." Bloch then told Greene about the exchange, and Greene indicated he did not want to involve Johnson (a friend of his) or make him a co-defendant. Bloch did not pursue the lead any further. A jury convicted Greene of all charges.

Three days after the jury rendered its verdict, Greene submitted a pro se motion for a new trial in the "interest of justice" asserting that the real perpetrator had come forward and admitted his guilt, and that Bloch failed to investigate and

present evidence of that alternative perpetrator. *See* D.C. Super. Ct. Crim. R. 33. Given the seeming conflict of interest, Bloch withdrew as Greene's counsel, and the court appointed post-trial defense counsel, John Carney, to assist with the new trial motion.

Carney then learned that Johnson—together with another man named Aubrey Wallace—had met with a defense attorney named Bryan Brown (otherwise unaffiliated with Greene's case) after the conclusion of Greene's trial, and that the two men said they had committed the offense together. Unlike Johnson, Wallace resembled the assailant captured on the surveillance video, and similarly resembled Greene. The two men said that Johnson created the bogus car listing and coordinated the fake sale. Johnson explained that he used Greene's email address, which he knew the password to, and Greene's Lexus, which he had a key to, having previously borrowed it. According to the two men, Wallace was the one with the gun who carried out the assault, sticking Pinkney up and tackling him, and is the one seen in the surveillance footage. While Johnson had come forward before trial, he made no mention of an accomplice at that point, and Wallace did not come forward until after the jury had rendered its verdict.

Carney filed a supplement to Greene's new trial motion on Greene's behalf, detailing the new information about Johnson and Wallace and requesting an evidentiary hearing. The trial court held the requested evidentiary hearing but denied the motion. The court indicated it was applying the more lenient "interest of justice" standard reserved for new trial motions filed within seven days of the jury's verdict, as Greene's initial pro se filing had been. *See* D.C. Super. Ct. Crim. R. 33(b)(2).[1] That standard, as applied to testimony from a new witness that came to light only after trial, asks whether "a fair trial requires that the [new witness'] testimony be made available to the jury." *Benton v. United States*, 188 F.2d 625, 627 (D.C. Cir. 1951); *see also M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) (D.C. Circuit opinions "rendered prior to February 1, 1971" are binding on this court). The court answered in the negative, reasoning that "[e]ven assuming *arguendo* that the Court credits the statements of the two witnesses" confessing to the crimes, Greene's motion must nonetheless fail because that evidence "could have been discovered with due diligence before trial."

---

[1] In 2017, Rule 33 was amended so that this standard now applies to motions filed within fourteen days of the jury's verdict. *See* D.C. Super. Ct. Crim. R. 33 comment to 2017 amendments. Motions based on newly discovered evidence, by contrast, may be filed within three years of the jury's verdict. D.C. Super. Ct. Crim. R. 33(b)(1). But the movant must satisfy "stricter standards" when a new trial motion is filed outside of Rule 33(b)(2)'s more abbreviated timeline. *Green v. United States*, 164 A.3d 86, 91-94 (D.C. 2017).

In a prior appeal, we vacated that order and remanded back to the trial court. We observed that, despite its assertion to the contrary, the "court seemed to apply the more rigid five-factor test which governs motions for a new trial based on newly discovered evidence" outside of the narrow timeframe provided by Rule 33(b)(2). *Greene v. United States*, 17-CF-810, Mem. Op. & J at 1-2 (D.C. Feb. 15, 2019). It should have instead applied the more lenient interest of justice standard applicable to R. 33(b)(2) motions, given when Greene filed his motion.[2] *Id*. We highlighted that under the more lenient standard, a lack of diligence on the movant's part is not a fatal defect precluding relief, though it "remains a consideration." *Id.* at 2; *see also Green v. United States*, 164 A.3d 86, 95 (D.C. 2017) ("[A]ppellant is not required to demonstrate his own diligence under the interests of justice standard, [though] diligence is a valid factor for the trial court, and this court, to consider.").

---

[2] The more lenient interest of justice standard applies to all motions filed within Rule 33(b)(2)'s narrow timeframe (seven days prior to the 2017 amendments), including those based on newly discovered evidence. *Sellars v. United States*, 401 A.2d 974, 978-79 (D.C. 1979). The more exacting five-factor test for claims based on newly discovered evidence and filed outside of Rule 33(b)(2)'s abbreviated window is: "(1) the evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such nature that in a new trial it would probably produce an acquittal." *Heard v. United States*, 245 A.2d 125, 126 (D.C. 1968).

On remand, the court denied Greene's new trial motion anew. The court again "assum[ed] the credibility of the statements of the two witnesses—Deangelo Johnson and Aubrey Wallace." But it reasoned that Greene's "motion must fail because there are no 'exceptional circumstances' which prevented him from receiving a fair trial." The court once more stressed Greene's lack of diligence in pursuing and presenting Johnson and Wallace's confessions, noting that "Wallace's testimony could have been discovered through due diligence" if defense counsel had only followed up on Johnson's lead. While the court was careful to note that the lack of diligence was "not a determinative factor," it weighed it heavily "among other factors" animating its decision. In closing, and contrary to its previously stated operating assumption that Johnson and Wallace were credible, the court articulated reasons to doubt Johnson and Wallace: Johnson "changed his version of the events," telling Greene's trial counsel that he was the perpetrator, but only after trial did he add that he had an accomplice in Wallace. As for Wallace, the court noted "he provided limited details," did not provide a sworn statement or allow himself to be recorded, and was biased because he was "either a friend or acquaintance" of Greene.[3]

---

[3] The record is thin on this last point. When Carney was asked about the extent to which Wallace and Greene knew each other, he answered (based on Wallace's telling) that "[i]t was just like they go into a particular area and on Wilmington Street and they hang out." Similarly, the Rule 33 motion Carney filed

In the meantime, Greene also filed a pro se motion under D.C. Code § 23-110 to vacate his convictions due to ineffective assistance of counsel, and Carney followed-up with a supplemental filing in support of the motion. The counseled supplement focused largely on trial counsel's failure to call a different witness, Lawrence Washington, who attested that he witnessed the assault and that Greene was not the person who committed it. It also claimed that trial counsel was ineffective for failing to investigate Johnson's confession to her that he had committed the crime, noting that if counsel had exercised "reasonable diligence" and followed up on that lead, she would have learned that Wallace aided Johnson and matched the person on the surveillance video. In denying Greene's § 23-110 motion, the trial court rejected Greene's argument that his counsel was ineffective for failing to call Washington as a witness. However, the court did not address the argument that Greene's trial counsel was ineffective in failing to investigate and present evidence about Johnson and Wallace as the true perpetrators.

---

on Greene's behalf indicated that Wallace "knows Marquell Greene." When pressed further on the subject, Carney said he did not know the extent of any relationship between Wallace and Greene.

Greene now brings this appeal, challenging both the trial court's order denying his Rule 33 motion for a new trial and its order denying his § 23-110 motion to vacate his convictions.

## II.

## A.

We begin with the court's denial of Greene's Rule 33 motion for a new trial. "A trial court's denial of a motion for new trial is reviewed for abuse of discretion," and "[w]e will not reverse if the denial is reasonable and supported by the record." *Tyer v. United States*, 912 A.2d 1150, 1166-67 (D.C. 2006). A defendant is entitled to a new trial in "the interest of justice" under Rule 33 if the motion is made in the timeframe set forth in Rule 33(b)(2), and "'exceptional circumstances' prevented the defendant from receiving a fair trial." *Id.* at 1167 (quoting *Huggins v. United States*, 333 A.2d 385, 387 (D.C. 1975)). "Perhaps unsurprisingly, our precedents do not cabin or clearly describe the 'exceptional circumstances' that will justify granting a new trial in the interests of justice." *Green*, 164 A.3d at 93. It is, instead, a fact-intensive inquiry. *Id.*

"The interest of justice standard calls for a new trial if 'a fair trial requires that the new witness' testimony be made available to the jury." *Sellars v. United States*, 401 A.2d 974, 979 (D.C. 1979) (quoting *Benton*, 188 F.2d at 627 (parentheses omitted)).  Put another way, "the interest of justice calls for a new trial when a new witness with important testimony is found" within the brief post-verdict timeframe provided by Rule 33(b)(2).  *Id.*  To illustrate the point, in *Benton*, a defendant was convicted of "taking indecent liberties with a child" based primarily on the child's account of what occurred.  *Benton*, 188 F.2d at 626.  Four days after the guilty verdict, the defense filed a new trial motion along with an affidavit from the child's mother in which she cast doubt on several details in her daughter's account, and further stated, "my conscience does not allow me to believe that anything happened to my girl on that night."  *Id.* at 627.  The trial court denied the motion.  The D.C. Circuit reversed, holding that "a fair trial requires that the mother's testimony be made available to the jury."  *Id.*

Applying those same principles, we conclude the trial court abused its discretion in denying the new trial motion.  The trial court's express operating assumption, both in its initial denial and again on remand, was that Johnson and Wallace were credible and telling the truth.  In other words, the court started from the premise that Greene was innocent.  From that premise, and contrary to the trial

court's conclusion, no reasonable sense of justice would require Greene to spend more than a decade in prison simply because he or his counsel could have been more diligent in pursuing exonerating evidence before trial. "[C]oncern about the injustice that results from the conviction of an innocent person has long been at the core of our criminal justice system." *Schlup v. Delo*, 513 U.S. 298, 325 (1995); *cf. Benton*, 188 F.2d at 627. "That concern is reflected . . . in the 'fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free.'" *Schlup*, 513 U.S. at 325 (quoting *In re Winship*, 397 U.S. 358, 372 (1970) (Harlan, J., concurring)). Moreover, because a Rule 33(b)(2) "motion must be filed so soon after trial," a trial court's consideration of it should be "substantially unaffected by the usual considerations favoring finality of judgments." *Godfrey v. United States*, 454 A.2d 293, 299 (D.C. 1982).

The trial court is free to revisit, on remand, its starting premise that Greene was innocent. But if the court concludes there is a reasonable probability that jurors would hear and credit Johnson and Wallace's account, then there is necessarily "a reasonable probability that the outcome of a new trial would be different from the

result in the first trial," and a new trial should follow. *See Whitley v. United States*, 783 A.2d 629, 635 (D.C. 2001).[4]

We recognize that the trial court, at one point, seemed to disregard its operating premise that Johnson and Wallace were credible, providing several reasons to doubt their account. In concluding its analysis, the court opined that Johnson had "changed his version of events," while Wallace provided "limited details," would not provide a sworn or recorded statement, and was biased because he was "either a friend or acquaintance" of Greene's.[5] But the court never posited this as an alternative basis for its ruling, stripped of the express premise that Johnson

_____

[4] *Whitley* concerned a motion for a new trial filed more than two years after the verdict based on newly discovered evidence, and thus applied a more exacting standard than the one we confront here. 783 A.2d at 632. It therefore may not be necessary for Greene to satisfy *Whitley*'s "reasonable probability" of acquittal standard to satisfy the more relaxed standard applicable in this context, that "a fair trial requires that the [new witness'] testimony be made available to the jury." *Benton*, 188 F.2d at 627; *see also Green*, 164 A.3d at 93; *Sellars*, 410 A.2d at 979; *Brodie v. United States*, 295 F.2d 157, 160 (D.C. Cir. 1961). But such a showing would certainly suffice, at least absent evidence that Greene was aware of Wallace's confession before trial and simply made a strategic decision not to introduce it.

[5] As explained *supra* note 3, there is little support for this last conclusion. It is not clear the extent to which Wallace knew Greene at all, as the evidence suggests only that he was familiar with him from the neighborhood. Assuming that is some bare evidence of "bias," as the trial court concluded, it is not much. A casual familiarity with another is typically not the type of relationship that would prompt one to falsely confess to a serious crime on the other's behalf.

and Wallace were credible.  Nor did it address whether its own doubts meant there was no reasonable probability that a new jury would credit Johnson and Wallace's account.  *See supra* note 4 and accompanying text.  It is therefore unclear whether this credibility discussion was an independent basis for the trial court's decision, though even if it were, we would have no assurance that its ruling was not infected by its overly exacting view of what satisfies the interest of justice standard, as discussed above.

We therefore view this internal inconsistency in the court's reasoning—having abandoned its own premise sub silentio—as another reason to vacate its order and remand for reconsideration.  *See Subsalve USA Corp. v. Watson Mfg., Inc.*, 462 F.3d 41, 45 (1st Cir. 2006) ("Ordinarily, an appellate court confronted with an internally inconsistent order would vacate the offending order and return the case to the authoring court for clarification.").

**B.**

Turning to the trial court's denial of Greene's § 23-110 motion, we again vacate and remand for reconsideration.  A key aspect of Greene's argument was that his trial counsel was ineffective in failing to investigate Johnson's confession, and had she done so in the exercise of "reasonable diligence," she "could have learned

the identity of Aubrey Wallace, the individual who in fact committed the offense." That argument echoed the trial court's own reasoning—in denying Greene's Rule 33 motions—that Wallace "could have been discovered before trial" through the exercise of "due diligence."[6]

Greene now correctly points out that, in ruling on his § 23-110 motion, the trial court made no mention of Wallace and entirely ignored this aspect of his claim.[7] "[B]ecause the trial court did not rule on this issue, we remand to allow the court to consider [it] in the first instance." *Arrington v. United States*, 238 A.3d 218, 221 (D.C. 2020).

---

[6] In denying his Rule 33 motion, the trial court faulted Greene for directing his counsel not to speak with Johnson because he "didn't want to make him a co-defendant." It is not at all obvious that a defendant's direction would relieve counsel of their duty to investigate an exonerating lead. "Our law is clear 'that counsel for the accused has ultimate responsibility for many tactical trial decisions, such as which witnesses to call.'" *Blackmon v. United States*, 146 A.3d 1074, 1079 (D.C. 2016) (quotation omitted). Those judgment calls themselves must be predicated on reasonable investigation. *See Cosio v. United States*, 927 A.2d 1106, 1123 (D.C. 2007) (en banc) ("'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,' but 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'") (quoting *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984)).

[7] Greene also contends that the trial court erred in concluding, without holding an evidentiary hearing, that his counsel was not ineffective for failing to call Washington as a witness. In light of our disposition otherwise vacating the court's orders and remanding, we do not opine on that contention.

The government counters that a remand is unwarranted because "appellant did not raise trial counsel's alleged errors respecting Johnson and Wallace in his § 23-110 motion," or at least did not do so in a manner that "suffice[d] to raise the . . . issue as an independent ground for relief." We disagree. The counseled supplement to Greene's § 23-110 motion repeatedly argued that trial counsel's failure to investigate Johnson's lead and track down Wallace amounted to ineffective assistance. Page two of the five-page supplement argued (1) that trial counsel "failed to call witnesses that would have established that defendant did not commit the offenses," highlighting Wallace as one of those two witnesses, and (2) that trial counsel "through reasonable diligence pretrial could have learned the identity of Aubrey Wallace, the individual who in fact committed the offense." Counsel then dedicated the penultimate paragraph of his argument to detailing Johnson and Wallace's account and how it could have been uncovered before trial through diligent investigation. The supplement's final substantive sentence—its parting shot—was that "if this evidence had been presented at trial the result of the proceeding would have been different."

Greene more than adequately presented the argument for the trial court's consideration. The court simply failed to rule on it.[8]

## III.

The trial court's order denying Greene's Rule 33 motion for a new trial, and its order denying his § 23-110 motion, are hereby vacated. We remand the case for further proceedings.

*So ordered.*

---

[8] The government also points out that Greene "expressly declined to present an ineffective-assistance claim" "during the course of the new-trial-motion litigation," as if that somehow waived this aspect of his subsequent § 23-110 claim. It did not. Greene sought a new trial under Rule 33 in the interest of justice, regardless of whether his trial counsel was ineffective. The government responded that his Rule 33 claim was, in substance, an ineffective assistance of counsel claim, and that the court should treat it as such. Greene disagreed, and replied that he was not asserting ineffective assistance of counsel *at that time*, while expressly noting that he could always do so later. Nothing about that procedural history alters the fact that Greene did later raise a § 23-110 claim that his trial counsel was ineffective for failing to investigate Johnson's lead and uncover Wallace as the real perpetrator.